**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAWRENCE E. MARTIN, on behalf of himself and all other similarly situated,<br><br>               Plaintiff,<br>   v.<br>BRIGHTHOUSE LIFE INSURANCE COMPANY and BRIGHTHOUSE LIFE INSURANCE COMPANY OF NEW YORK,<br>              Defendants. | NO. 1:21-CV-02923-RA |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BRIGHTHOUSE LIFE INSURANCE COMPANY AND BRIGHTHOUSE LIFE INSURANCE COMPANY OF NEW YORK'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

FACTS AS ALLEGED ........................................................................... 3

    A.    Martin Purchased A Life Insurance Policy Issued By BLIC In 1984 ............. 3

    B.    The Policy Provides That BLIC Is To Determine The Cost Of Insurance Rate Based On Future Outlook For Mortality And Expenses ....................... 3

    C.    Martin Alleges That BLIC Has Maintained The Same Cost Of Insurance Rates Since 2001, Although Overall Mortality Rates Improved ................... 6

ARGUMENT ........................................................................................ 6

    A.    All Claims Against BLICNY Should Be Dismissed Because BLICNY Is Not Party To The Contract Between Martin And BLIC ................................ 7

    B.    Martin Fails To State A Claim For Breach Of Contract ................................. 8

    C.    Martin Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing ..................................................................... 13

    D.    Martin Fails To State A Claim For Unjust Enrichment ................................. 14

    E.    Martin's Claims Are Largely Barred By Applicable Statutes Of Limitations ................................................................................................. 15

CONCLUSION ..................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015) ...................................................... 15

*ACE Sec. Corp. v. DB Structured Prod., Inc.*,
   25 N.Y.3d 581 (2015) ............................................................................. 16

*AEI Life LLC v. Lincoln Benefit Life Co.*,
   892 F.3d 126 (2d Cir. 2018) .................................................................... 7

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..................................................... 14

*Amica Mut. Ins. Co. v. Morowitz*,
   613 F. Supp. 2d 1358 (S.D. Fla. 2009) ................................................... 13

*Andrews v. Sotheby Int'l Realty, Inc.*,
   No. 12 CIV. 8824 RA, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014),
   *aff'd* 586 F. App'x 76 (2d Cir. 2014)...................................................... 7

*Aozora Bank, Ltd. v. Credit Suisse Grp.*,
   144 A.D.3d 437 (1st Dep't 2016) ........................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................... passim

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................ 6

*Blue Stone Entertainment LLC v. AGS CJ Corp.*,
   No. 20-CV-4727 (RA), 2021 WL 918295 (S.D.N.Y. Mar. 10, 2021)...................................... 13

*City of Almaty, Kazakhstan v. Ablyazov*,
   No. 15-CV-5345 (AJN), 2018 WL 1583293 (S.D.N.Y. Mar. 27, 2018) ............................... 16

*Coffman v. Pruco Life Ins. Co.*,
   2011 WL 4550152 (D.N.J. Sept. 29, 2011) ............................................. 12

*Cornetta v. Town of Highlands*,
   434 F. Supp. 3d 171 (S.D.N.Y. 2020) ..................................................... 10

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) .................................................................... 13

*Cty. Of Orange v. Travelers Indem. Co.*,
   No. 13-CV-06790 NSR, 2014 WL 1998240 (S.D.N.Y. May 14, 2014) .............................. 14

*Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*,
  34 N.Y.3d 327 (2019) ................................................................... 15

*EBC I, Inc. v. Goldman, Sachs & Co.*,
  5 N.Y.3d 11 (2005) ....................................................................... 14

*Glob. Fin. Corp. v. Triarc Corp.*,
  93 N.Y.2d 525 (1999) ................................................................... 15

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ............................................................ 8

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) ..................................................... 7

*In re Residential Cap., LLC*,
  524 B.R. 563 (Bankr. S.D.N.Y. 2015) ........................................... 17

*Jin Chai–Chen v. Metro. Life Ins. Co.*,
  190 A.D. 3d 635 (1st Dep't 2021) .................................................. 8

*Kermanshah v. Kermanshah*,
  580 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................... 16

*Kirschner v. CIHLP LLC*,
  No. 15-CV-8189 (RA), 2016 WL 5720782 (S.D.N.Y. Sept. 30, 2016) .................................... 6

*Lena Watts-Robinson v. Anderson Reporting Servs., Inc.*,
  No. 3:11-CV-290-J-37JBT, 2011 WL 13295707
   (M.D. Fla. Sept. 22, 2011) ........................................................... 14

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ..................................................................... 8

*Markov v. Katt*,
  176 A.D.3d 401 (1st Dep't 2019) .................................................... 8

*Maxon v. Sentry Life Ins. Co.*,
  No. 18-CV-254-JDP, 2019 WL 4540057 (W.D. Wis. Sept. 19, 2019), *appeal dismissed*, No. 19-3501, 2020 WL 3414847
   (7th Cir. Apr. 15, 2020) ........................................................ 10, 12, 13

*Norem v. Lincoln Ben. Life Co.*,
  737 F.3d 1145 (7th Cir. 2013) ................................................. 10, 12, 13

*Noskov v. Roth*,
  No. 19-CV-7431 (RA), 2020 WL 4041125 (S.D.N.Y. July 17, 2020) .................................... 15

*People's Trust Ins. Company v. Valentin*,
   305 So.3d 324 (Fla. Dist. Ct. App. 2020) ................................................................ 8

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
   449 F. App'x 57 (2d Cir. 2011) ............................................................................... 14

*Potiker v. Gasiunasen Gallery*,
   No. 09-82356-CIV, 2010 WL 2949943 (S.D. Fla. July 26, 2010) ......................... 16

*Rothstein v. Auto Club South*,
   2019 WL 5722215 (S.D.N.Y. 2019) ......................................................................... 8

*Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v.*
   *Ryder Int'l, Inc.*,
   264 F. App'x 878 (11th Cir. 2008) .......................................................................... 16

*Slam Dunk I, LLC v. Connecticut Gen. Life Ins. Co.*,
   No. 20-13706, 2021 WL 1575162 (11th Cir. Apr. 22, 2021) ........................... 1, 2, 11

**Statutes**

Fla. Stat. § 95.11 ...................................................................................................... 16

N.Y. C.P.L.R. § 202 ................................................................................................... 15

N.Y. C.P.L.R. § 213 ................................................................................................... 16

## PRELIMINARY STATEMENT

Martin's breach of contract claim is inconsistent with the plain language of his life insurance policy.  Martin alleges that he purchased a life insurance policy from a predecessor of Brighthouse Life Insurance Company ("BLIC") in 1984.  The policy provides for monthly charges, including a monthly cost of insurance charge, which is calculated using a cost of insurance rate.  The policy also says that BLIC will determine the cost of insurance rates, and will base them on "future outlook for mortality and expenses."  Martin alleges that BLIC and its affiliate Brighthouse Life Insurance Company of New York ("BLICNY") breached the policy because future outlook for mortality has improved, but the cost of insurance rates have not been adjusted downward since 2001.

As an initial matter, Martin cannot state any claim against BLICNY because it is not party to the policy.  More fundamentally, Martin cannot state a claim against BLIC (or BLICNY) because the policy's plain language forecloses his theory of breach.  The policy expressly says the cost of insurance rate will be based on future outlook for mortality and expenses.  Martin makes allegations regarding future outlook for mortality, but makes none regarding expense outlook.  His assertion that future outlook for mortality has improved while BLIC has maintained its cost of insurance rates therefore does not show a breach.  Rather, the obvious explanation for why BLIC's rates have remained steady is that the expense outlook has increased.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (plaintiff does not state a claim when there is an "obvious alternative explanation" suggesting lawful conduct).

The Eleventh Circuit—applying the law of Florida, which is where Martin resides— recently affirmed dismissal of a complaint substantially similar to Martin's.  In *Slam Dunk I, LLC v. Connecticut Gen. Life Ins. Co*., No. 20-13706, 2021 WL 1575162, at *1–2 (11th Cir. Apr. 22, 2021), the policyholder alleged that the insurer failed to reduce the cost of insurance rate despite

1

overall improvement in mortality.  The District Court dismissed the complaint and the Eleventh Circuit subsequently affirmed, holding plaintiff failed to state a claim because the insurer was not required to base the cost of insurance rate "exclusively on expectations of future mortality experience."  *Id*. at *3.  The same holds true here.  The policy expressly says BLIC will base the cost of insurance rate on "future outlook for mortality *and expenses.*"  Martin's allegations about future outlook for mortality therefore do not state a claim.

Martin's tag-along claims for breach of the implied covenant of good faith and unjust enrichment are equally flawed.  As a matter of law, a plaintiff may not bring a separate cause of action for breach of the implied covenant of good faith when a breach of contract claim based on the same facts is also alleged.  Unjust enrichment claims cannot stand where, as here, an express contract governs the subject matter of the dispute.  The policy governs the calculation of cost of insurance rates, and Martin does not state a claim for breach.

Finally, the great majority of Martin's claims are in any event time-barred.  New York's borrowing statute requires application of the shorter limitations period of either New York or the foreign state where the claim accrued.  Martin's claims therefore must be timely under the limitations periods of New York and Florida, where he has resided since 1998.  Martin alleges that since 2001, BLIC has wrongfully failed to decrease its cost of insurance.  He filed his complaint on April 6, 2021.  Martin's breach of contract and breach of good faith claims are therefore barred by Florida's five-year statute of limitations to the extent they are based on allegations regarding conduct prior to April 6, 2016.  Martin's unjust enrichment claim concerning conduct prior to April 6, 2018 is likewise barred by New York's three-year statute of limitations.

## FACTS AS ALLEGED

### A.    Martin Purchased A Life Insurance Policy Issued By BLIC In 1984

Martin alleges that he purchased a "universal life insurance policy" (the "Policy") in 1984 when he was 40 years old.  *See* Class Action Complaint ("Compl.") ¶ 13; *Id.* Ex. A. at 2.[1]  The Policy was issued by The Travelers Insurance Company, which is now known as BLIC.  *Id.* ¶ 14 (explaining that the Travelers Insurance Company, following several name changes, became BLIC as of March 6, 2017).  The Policy had a death benefit of $100,000 payable to Martin's beneficiaries upon his death.  *Id.* ¶¶ 3, 13.  Martin resided in New York when he purchased the Policy.  *Id.* ¶ 13. He moved to Florida in 1998, where he currently resides.  *Id.*

Generally, universal life insurance policies include a savings component.  *Id.* ¶ 22. Additionally, they do not have fixed premiums.  *Id.*  In particular, the Policy provides that Martin can adjust the timing and amount of his premium payments over time.  *Id.* ¶¶ 22–23.  The premiums paid by Martin go toward the Policy's Cash Value, which accumulates interest at the contractually-guaranteed minimum rate of 4.5%.  *Id.* ¶¶ 23, 53.  The Cash Value, less certain deductions, would be payable to Martin on the maturity date, August 27, 2039, if he is alive, or sooner should he surrender the Policy.  *Id.* Ex. A at 2, 8.

### B.    The Policy Provides That BLIC Is To Determine The Cost Of Insurance Rate Based On Future Outlook For Mortality And Expenses

The Policy provides that monthly deductions are to be made from the Cash Value of the Policy for, among other things, expense charges and cost of insurance.  *Id.* Ex. A at 9.  Cost of insurance charges "are designed to cover the risk to the insurance company of a death claim"— *i.e.*, the risk that the insured will die during the particular time period and Brighthouse will have

---

[1] The allegations in the Complaint are accepted as true solely for the purposes of this motion.  Citations to Exhibit A of the Class Action Complaint refer to the ECF page numbers marked at the top of each page.

to pay the death benefit owed under the Policy.  *Id*. ¶ 50 n.9.[2]  The Policy says that the monthly cost of insurance charge is calculated based on: (a) the amount insured under the Policy (*i.e.*, $100,000) divided by an interest factor specified in the Policy (*i.e.*, 1.00367481); (b) the Cash Value of the Policy at the beginning of the particular month; and (c) the applicable cost of insurance rate based on Martin's age during the particular month.  *Id*. Ex. A at 2, 9.

As to the cost of insurance rates referenced in "(c)," the Policy displays the maximum cost of insurance rates that BLIC may charge in a Cost of Insurance Table.  *Id*. Ex. A at 6.  The Cost of Insurance Table provided to Martin with the Policy shows that as Martin ages the maximum cost of insurance rate applicable to him will increase.  The older an insured, the greater the risk of a death claim, and therefore the higher the cost of insurance rate.  For instance, the Cost of Insurance Table shows that at age 40 (when Martin purchased the Policy), the maximum cost of insurance rate is .3077; at 60 it is 1.7941; and at 77 (Martin's age today) the maximum cost of insurance rate is 7.8178.

---

[2] Citing Brighthouse Financial, Universal Life Insurance Frequently Asked Questions (2017), available at https://www.brighthousefinancial.com/content/dam/brighthouse-financial/public/pdfs/paul/UL-FAQ-Flyer.pdf).

```
                         COST OF INSURANCE TABLE
                (MONTHLY RATE FOR EACH $1,000 OF COVERAGE AMOUNT)
```

| AGE | RATE | AGE | RATE | AGE | RATE | AGE | RATE |
|-----|------|-----|------|-----|------|-----|------|
| 40 | .3077 | 54 | 1.0443 | 68 | 3.7221 | 82 | 12.0538 |
| 41 | .3345 | 55 | 1.1418 | 69 | 4.0769 | 83 | 13.0707 |
| 42 | .3633 | 56 | 1.2493 | 70 | 4.4524 | 84 | 14.1463 |
| 43 | .3947 | 57 | 1.3674 | 71 | 4.8439 | 85 | 15.2893 |
| 44 | .4291 | 58 | 1.4968 | 72 | 5.2485 | 86 | 16.5091 |
| 45 | .4672 | 59 | 1.6387 | 73 | 5.6712 | 87 | 17.8221 |
| 46 | .5095 | 60 | 1.7941 | 74 | 6.1247 | 88 | 19.2561 |
| 47 | .5565 | 61 | 1.9634 | 75 | 6.6236 | 89 | 20.8521 |
| 48 | .6086 | 62 | 2.1485 | 76 | 7.1833 | 90 | 22.6660 |
| 49 | .6661 | 63 | 2.3512 | 77 | 7.8178 | 91 | 24.7698 |
| 50 | .7296 | 64 | 2.5738 | 78 | 8.5322 | 92 | 27.2580 |
| 51 | .7985 | 65 | 2.8194 | 79 | 9.3201 | 93 | 30.2511 |
| 52 | .8735 | 66 | 3.0913 | 80 | 10.1749 | 94 | 34.0258 |
| 53 | .9553 | 67 | 3.3924 | 81 | 11.0885 | | |

```
THE RATES USED IN THE COST OF INSURANCE CALCULATION ARE GUARANTEED NOT TO EXCEED
THE MAXIMUM RATES SHOWN ABOVE.
```

*Id*. Ex. A at 6.

Additionally, the Policy notes that BLIC may use rates less than those shown in the Cost of Insurance Table. *Id*. Ex. A at 9. The Policy explains that BLIC will determine the cost of insurance rates and that the rates will be based on BLIC's future outlook for mortality and expenses. *Id*. Specifically, the Policy says:

The cost of insurance rates are shown in the COST OF INSURANCE TABLE. We may use rates less than those shown. We will base these rates only on our future outlook for mortality and expenses. We will determine any change in the cost of insurance rates:

1. not more often than once in any contract year; but

2. at least once in every five contract years.

Nothing in this contract will be affected by our actual mortality and expense experience. We will determine the rates at the start of each contract year and will assure them for the next contract year. Any change we make in the rates will be:

1. on a uniform basis for Insureds of the same age, sex, duration, and rate class; and

2. in accordance with the procedures and standards on file with the Insurance Department of the state in which this contract is issued for delivery.

5

*Id.* Ex. A at 9–10.

### C.    Martin Alleges That BLIC Has Maintained The Same Cost Of Insurance Rates Since 2001, Although Overall Mortality Rates Improved

Martin alleges that he has paid all cost of insurance charges since November 1984. *Id.* ¶ 15. The cost of insurance charges paid by Martin have allegedly increased as he has aged, including in recent years. For instance, Martin alleges he paid a cost of insurance charge of $2,453.05 in 2014 and $4,321.68 in 2019. *Id.* ¶ 38. Martin also alleges that BLIC has maintained the same cost of insurance rates since 2001. *Id.* ¶ 50. He relies on a March 2017 Brighthouse Financial "Frequently Asked Questions" document, which states: "Between 1991 and 2001, Brighthouse Financial changed the current COI rates on a portion of UL policies, with some rates increasing and some decreasing. While Brighthouse Financial could change COI rates in the future, there have been no changes since 2001." *Id.* ¶ 50 n.9. Martin also claims that, across the general population, life expectancy and mortality rates have improved since 1984. *Id.* ¶¶ 40–49. He asserts that BLIC breached the Policy by not adjusting its cost of insurance rates downward to reflect improved mortality rates. *Id.* ¶ 51.

### ARGUMENT

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted where the complaint does not allege enough facts to state a plausible claim for relief. *Kirschner v. CIHLP LLC*, No. 15-CV-8189 (RA), 2016 WL 5720782, at *3 (S.D.N.Y. Sept. 30, 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted).  A plaintiff does not state a plausible claim for relief where there was an "obvious alternative explanation" suggesting lawful conduct.  *Id.* at 682.

A federal court sitting in diversity jurisdiction "applies the choice-of-law rules of the state in which it sits"; here, New York.  *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12 CIV. 8824 RA, 2014 WL 626968, at *4 (S.D.N.Y. Feb. 18, 2014), *aff'd* 586 F. App'x 76 (2d Cir. 2014). Under New York choice of law rules, to determine the state law applicable to breach of contract and unjust enrichment claims, the Court considers "significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties."  *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018); *see also In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (finding that the significant contacts test applies to unjust enrichment claims).

The jurisdictions relevant to Martin's claims are New York—where Martin resided when he purchased the Policy and where the Policy was issued in 1984—and Florida—where Martin alleges he moved in 1998 and resides today.  *See* Compl. ¶ 13; *see also id.* at Ex. A at 24–26 (Policy signed in New York).  The Court need not decide which state's law applies because Martin's claims fail under both New York and Florida law.

A.   **All Claims Against BLICNY Should Be Dismissed Because BLICNY Is Not Party To The Contract Between Martin And BLIC**

Martin brings each of his three claims against BLIC and also against BLICNY.  As a threshold matter, BLICNY should be dismissed as a defendant.  Martin's claims are all premised on whether the Policy required that his cost of insurance rate decrease as a result of improving mortality.  BLIC issued the Policy to Martin.  *See supra* at 3.  While Martin alleges—without any supporting facts—that BLICNY "administers the policy," Compl. ¶ 14, this is irrelevant.

BLICNY is not party to the Policy and Martin makes no allegations regarding any obligations owed to him by BLICNY with respect to the cost of insurance rate.  Martin therefore cannot state a claim as to BLICNY.  One cannot be held liable under a contract to which he or she is not a party—there is no exception here to this blackletter law, because "[a]n insurance policy is a contract between the insurer and the insured." *Jin Chai–Chen v. Metro. Life Ins. Co.*, 190 A.D. 3d 635, 636 (1st Dep't 2021) (dismissing claims for breach of insurance contract as against the defendant insurance broker); *accord Rothstein v. Auto Club South*, 2019 WL 5722215, at *11 (S.D.N.Y. 2019) (applying Florida law, same); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ("[T]here are no indicia of an enrichment that was unjust where the pleadings fail[] to indicate a relationship between the parties that could have caused reliance or inducement.").

### B.    Martin Fails To State A Claim For Breach Of Contract

To state a claim for breach of contract, a plaintiff must plead facts showing (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see Markov v. Katt*, 176 A.D.3d 401, 401–402 (1st Dep't 2019).  *See also People's Trust Ins. Company v. Valentin*, 305 So.3d 324, 326 (Fla. Dist. Ct. App. 2020) (elements are "(1) a valid contract, (2) a material breach, and (3) damages.").  Martin's claim fails because his allegations do not establish a breach of the Policy.

Martin alleges that BLIC has not adjusted its cost of insurance rates since 2001, Compl. ¶ 50, and that by maintaining its cost of insurance rates, BLIC breached the provision in the Policy that rates will be based "only on [BLIC's] future outlook for mortality and expenses." *Id.* ¶ 32. Martin contends that life expectancy and mortality have improved across the general population,

*id.* ¶¶ 6, 11, 49, and therefore the Policy obligated BLIC to adjust Martin's cost of insurance rates downwards. *Id.* ¶ 6–7.

Martin fails to state a claim because, even accepting his factual allegations as true, he has not alleged a breach.  As an initial matter, Martin only alleges that BLIC has kept its cost of insurances rates constant since 2001.  *Id.* ¶ 50.  He pleads no facts concerning BLIC's cost of insurance rates in years prior to 2001, *id.* ¶ 51, and the Brighthouse Financial document that Martin cites explains that Brighthouse Financial did decrease cost of insurance rates in years prior to 2001. *Id.* ¶ 50 n.9.  Martin therefore has not stated a claim for a breach in any year prior to 2002 because the factual allegation on which his claim is based—that BLIC has not decreased its rates— concerns only years from 2002 forward.

Moreover, even for 2002 forward, Martin's factual allegations do not allege a breach.  As to the cost of insurance rate calculations, the Policy says that "[W]e will base these rates only on our future outlook for mortality and expenses . . . Nothing in this contract will be affected by our actual mortality and expense experience." *Id.* Ex. A. at 9–10.  Martin's Complaint reads those provisions to presume a linear relationship between mortality and cost of insurance *See id.* ¶ 10 ("This provision requires Defendants to decrease COI rates if future outlook for mortality improved").  But the Policy does not say there will be such a relationship or dictate any particular formula for determining the cost of insurance rate.  Rather, while the Policy lists factors that cost of insurance rates will be based on, the Policy makes clear that BLIC will perform its own calculation, subject to its own internal formula, providing that "[w]e will determine any change in the cost of insurance rates . . ." *Id.* Ex. A at 9.  As other courts have recognized, this language "makes clear that [the insurer] will utilize its own formula to determine the rates, subject to the limitation that they cannot exceed the guaranteed maximum rates." *Norem v. Lincoln Ben. Life*

*Co.*, 737 F.3d 1145, 1147, 1152 (7th Cir. 2013) (referencing policy language stating that "rates will be determined by us"); *see also Maxon v. Sentry Life Ins. Co.,* No. 18-CV-254-JDP, 2019 WL 4540057, at *3–4 (W.D. Wis. Sept. 19, 2019), *appeal dismissed*, No. 19-3501, 2020 WL 3414847 (7th Cir. Apr. 15, 2020) (language stating that insurer will consider certain factors when calculating cost of insurance rates is not a "promise to use a specific formula").

Further, even viewing cost of insurance rate as a product of a simple equation determined by future outlook for mortality and future outlook for expenses, Martin does not state a claim because his allegations concern only one factor—future outlook for mortality.  Martin makes no factual allegations concerning the other factor that the Policy expressly says cost of insurance rates will be based on—future outlook for expenses.  Martin's claim is premised on the theory that future outlook for mortality has a negative correlation with cost of insurance rate, *i.e.*, as outlook for mortality improves, then cost of insurance rates must be decreased.  Compl. ¶ 36.  But Martin ignores that the outlook for expenses would have a positive correlation with cost of insurance rate: If the outlook indicates BLIC's expenses will increase, a higher cost of insurance rate will be necessary.  Accordingly, the "obvious alternative explanation" for why cost of insurance rates have remained the same since 2001 is that any positive effect based on improving mortality has been counterbalanced by the negative effect of outlook for expenses.  Martin's factual allegations that mortality has improved and cost of insurance rates have remained the same since 2001 therefore does not suffice to state a claim that BLIC breached language saying cost of insurance rates will be based on "future outlook for mortality and expenses."  *See Iqbal*, 556 U.S. at 682 (holding plaintiff did not state a plausible claim for relief where there was an "obvious alternative explanation" suggesting lawful conduct); *see also Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 178 (S.D.N.Y. 2020) (a complaint should be dismissed "where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct") (quoting *Iqbal*, 556 U.S. at 679).

Multiple courts have found that allegations concerning an improvement in mortality rates do not sustain a breach of contract claim where, as here, the policy permits the insurer to consider factors in addition to mortality when determining cost of insurance rates.  Earlier this year, in *Slam Dunk I, LLC v. Connecticut Gen. Life Ins. Co.*, the Eleventh Circuit affirmed dismissal of a claim very similar to Martin's.  The policy in *Slam Dunk* provided that the cost of insurance rate was, among other things, "determined by [the insurer] based on its expectations as to future mortality experience."  2021 WL 1575162, at *1.  The plaintiff policyholder alleged that "[b]ecause, as a general matter, advancements in medicine and science have improved life expectancy over time, . . . [the insurer] should have either reduced or at least not increased the COI rate."  *Id*. at *2.  The Eleventh Circuit—applying Florida law (the state where Martin has resided since 1998)—affirmed dismissal.  The Eleventh Circuit  held: "Accepting [the policyholder's] factual allegations as true and viewing them in the light most favorable to [policyholder], in order to state a cause of action for breach of contract, [the insurer's] duty to adjust the COI rate would have to be based exclusively on expectations of future mortality experience."  *Id*. at *3.  However, the policy in *Slam Dunk* also expressly stated that cost of insurance would be based on factors in addition to expectation of future mortality experience.  *Id*. at *1.  The same holds true here.  The Policy expressly says that the cost of insurance rate will also be based on future outlook for expenses.  Compl. Ex. A at 9.  Martin's allegations regarding mortality expectations alone therefore do not state a claim for breach.

Similarly, in *Maxon v. Sentry Life Ins. Co.*, the District Court dismissed on the pleadings the plaintiff's claim that the defendant breached a universal life insurance policy by failing to lower

its cost of insurance rates to account for improved mortality expectations.  The Court held that the plaintiff's claim failed because, as here, the "[the insurer's] expectations as to future mortality experience," was not the only factor that the insurer could take into account when calculating its rates.  2019 WL 4540057, at *2, 4; *see also Norem*, 737 F.3d at 1150 (affirming judgment for the insurer on a claim alleging that the insurer breached a universal life insurance policy because its "COI rates have remained unchanged" because expected mortality was not the only factor that the insurer could take into account when calculating its rates under the policy); *Coffman v. Pruco Life Ins. Co.*, 2011 WL 4550152, at *3 (D.N.J. Sept. 29, 2011) (dismissing claim that the insurer breached a life insurance policy by taking into account factors in addition to expected mortality when calculating the rate because the policy did not say the insurer could only consider expected mortality when calculating the rate).

Martin tries to avoid dismissal by asserting that, contrary to the plain language of the Policy, BLIC was not permitted to base cost of insurance rates on future outlook for expenses. Martin alleges that because his annual statements include a line item noting a "$0.00" charge for expenses, BLIC may not take into account future outlook for expenses when calculating cost of insurance.  Compl. ¶ 36.  Martin, however, is conflating different provisions of the Policy.  The Policy states that monthly deductions will be made for "cost of insurance" and also for "the expense charges shown on the Contract Summary."  *Id.* Ex. A at 9.  Martin's Contract Summary states that "Monthly Expense Charges" are "None."  *Id.* Ex. A at 2.  The fact that his monthly expense charges were $0 is therefore entirely consistent with the Policy's language and in no way suggests BLIC may not consider "future outlook" for expenses in determining cost of insurance rates—as the Policy expressly permits BLIC to do.  *Id.* Ex. A at 9.  Martin thus attempts to read out of the Policy the language expressly permitting BLIC to base cost of insurance rate on future

outlook for expenses. His interpretation is unreasonable, disregards the Policy's plain language and cannot save his claim. *See Blue Stone Entertainment LLC v. AGS CJ Corp.*, No. 20-CV-4727 (RA), 2021 WL 918295, at *3–4 (S.D.N.Y. Mar. 10, 2021) (granting motion to dismiss where the plaintiff's reading of a contract "would require disregarding the [contract's] plain language" and reading words "out of the contract" by rendering them "superfluous"). *See also Norem*, 737 F.3d at 1153 (holding that a policy provision providing for monthly expense charges does not mean expenses cannot be considering in the insurer's calculation of the cost of insurance rate); *Maxon*, 2019 WL 4540057, at *4 (same).

Because Martin fails to allege facts showing that BLIC breached the provision of the Policy stating BLIC will base cost of insurance rates on "our future outlook for mortality and expenses," his breach of contract claim should be dismissed.

### C.   Martin Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Martin's claim for breach of the implied covenant fails as a matter of law. Neither New York nor Florida law "recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358, 1362 (S.D. Fla. 2009) (dismissing claim for breach of the implied covenant as "duplicative" where the plaintiff alleged "nothing more than a general allegation for breach of contract"). Here, Martin's implied covenant claim is based on the same facts as his breach of contract claim. *Compare* Compl. ¶ 66 ("Defendants breached the contract by deducting COI charges calculated from COI rates not based on future outlook for mortality experience and expenses, resulting in deduction of inflated COI") *with id.* ¶ 72 ("Defendants materially breached the covenant of good faith and fair

dealing by" failing to lower cost of insurance if "forecasts of mortality improve").  The breach of implied covenant claim must therefore be dismissed.  *See e.g.*, *Cty. Of Orange v. Travelers Indem. Co.*, No. 13-CV-06790 NSR, 2014 WL 1998240, at *2–3 (S.D.N.Y. May 14, 2014) (dismissing breach of implied covenant claim pled alongside a breach of contract claim because "crux of Plaintiff's allegations" and "facts giving rise to the two claims are the same."); *Lena Watts-Robinson v. Anderson Reporting Servs., Inc.*, No. 3:11-CV-290-J-37JBT, 2011 WL 13295707, at *2 (M.D. Fla. Sept. 22, 2011) (dismissing breach of implied covenant claim as "redundant" because the claim was "based upon the same facts as those giving rise to [the plaintiff's] breach of contract claim").

## D.    Martin Fails To State A Claim For Unjust Enrichment

Martin's unjust enrichment claim also fails as a matter of law.  Where, as here, an express contract term governs the matter of the dispute, a plaintiff may not bring an unjust enrichment claim.  *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 23 (2005) (dismissing unjust enrichment claim because "the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter"); *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (affirming dismissal on the same grounds); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) ("Plaintiffs cannot maintain their unjust enrichment claims . . . because express contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject matter of Plaintiffs' dispute").  Martin's unjust enrichment claim is premised on the terms of the Policy governing cost of insurance.  *See* Compl. ¶ 77 (alleging cost of insurance

payments exceeded amounts that could be "properly" charged under the Policy).  The claim must therefore be dismissed.

### E.     Martin's Claims Are Largely Barred By Applicable Statutes Of Limitations

Claims should be dismissed as untimely, in whole or in part, at the pleading stage where the statute of limitations defense "appears on the face of the complaint."  *Noskov v. Roth*, No. 19-CV-7431 (RA), 2020 WL 4041125, at *3 (S.D.N.Y. July 17, 2020).  A federal court sitting in diversity applies the forum state's statutes of limitation, and therefore New York's borrowing statute applies here.  *See 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200–201 (S.D.N.Y. 2015).  New York's borrowing statute requires that a cause of action "accruing without the state" must be timely under the laws of both New York and "the state where the cause of action accrued."  N.Y. C.P.L.R. § 202; *see Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 339 (2019) (finding that the court must import both the foreign limitations period and "the extensions and tolls applied in the foreign state").

Martin has resided in Florida since 1998.  Compl. ¶ 13.  His claims since 1998 have therefore accrued in Florida, so under the borrowing statute must be timely under both the New York and Florida statutes of limitations.[3]  *See Deutsche Bank Nat'l Tr. Co.*, 34 N.Y.3d at 338 (finding a "cause of action accrues at the time and in the place of the injury" which will usually be "where the plaintiff resides" in a breach of contract case); *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999) ("[W]here an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss").

---

[3] To the extent only the New York statute would apply to Martin's claims prior to 1998, these claims are facially time-barred for the reasons discussed below.

As to Martin's breach of contract and breach of good faith claims, Florida's five-year statute of limitations applies because it is shorter than New York's six year limitations period. *See* Fla. Stat. § 95.11(2)(b); N.Y. C.P.L.R. § 213(2) (six year statute of limitations for breach of contract claims); *Aozora Bank, Ltd. v. Credit Suisse Grp.*, 144 A.D.3d 437, 440 (1st Dep't 2016) (six year limitations period for breach of good faith claim).  A breach of contract claim under Florida law accrues "when the last act constituting the breach occurs."  *Potiker v. Gasiunasen Gallery*, No. 09-82356-CIV, 2010 WL 2949943, at *2 (S.D. Fla. July 26, 2010).  This is true even if the plaintiff did not suffer damages until after the breach and "regardless of whether the plaintiff knew that it had a claim."  *Id.*; *see also Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 880 (11th Cir. 2008) ("[T]he statute of limitations for breaches of written contracts is five years from the time the cause of action accrues.  Florida does not apply the discovery rule to [breach of contract claims] so the date of accrual is the date of the first breach").[4]

Martin's unjust enrichment claim seeks money damages (Compl. at 22) and is therefore governed by a three-year statute of limitations under New York law, which is shorter than Florida's four-year statute of limitations.  *Compare Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008) (applying a three-year statute of limitations to unjust enrichment claim seeking money damages) *with* Fla. Stat. § 95.11(3)(k) (four-year statute of limitations for unjust enrichment under Florida law).  A claim for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution."  *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2018 WL 1583293, at *4 (S.D.N.Y. Mar. 27, 2018).

---

[4] Under New York law a breach of contract claim also accrues when the contract is breached, regardless of when the plaintiff may discover the breach.  *See ACE Sec. Corp. v. DB Structured Prod., Inc.*, 25 N.Y.3d 581, 594 (2015) (holding that New York does not apply a "discovery rule to statutes of limitations in contract actions").

Martin alleges that BLIC breached the Policy, violated a duty of good faith and was unjustly enriched by not reducing cost of insurance rates and therefore charging inappropriately calculated cost of insurance since 2001.  Compl. ¶¶ 66, 72–73, 77.  Martin filed the Complaint on April 6, 2021.  Therefore, Martin's breach of contract and breach of good faith claims concerning any breach prior to April 6, 2016 (five years before filing) are time-barred.  *In re Residential Cap., LLC*, 524 B.R. 563, 592 (Bankr. S.D.N.Y. 2015) (dismissing breach of contract claims to the extent they relate to alleged wrongful acts prior to the limitations period).  Martin's unjust enrichment claim concerning any conduct prior to April 6, 2018 (three years before filing) is time-barred.

## CONCLUSION

The Class Action Complaint should be dismissed with prejudice.

/s/ Joseph M. McLaughlin
Joseph M. McLaughlin
Joshua C. Polster

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
jmclaughlin@stblaw.com
joshua.polster@stblaw.com

*Attorneys for Defendants Brighthouse Life Insurance Company and Brighthouse Life Insurance Company of New York*