USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/25/2025___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE E. MARTIN, on behalf of himself and
all others similarly situated,

Plaintiff,

-against-

BRIGHTHOUSE LIFE INSURANCE COMPANY,

Defendant.

21-CV-02923 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

### INTRODUCTION

Plaintiff Lawrence E. Martin ("Plaintiff") brings this putative class action against Brighthouse Life Insurance Company ("Defendant" or "Brighthouse") to recover damages based on Defendant's alleged breach of contract and the implied covenant of good faith and fair dealing.[1]  Presently before the Court are Plaintiff's motion for class certification and both parties' motions to exclude expert testimony.  For the reasons that follow, Defendant's motion to exclude the testimony of Mr. Long is DENIED; Defendant's motion to exclude the testimony of Dr. Carson is GRANTED in part and DENIED in part; Plaintiff's motion to exclude the testimony of Mr. Pfeifer is GRANTED in part and DENIED in part; Plaintiff's motion to exclude the testimony of Dr. Strombom is DENIED; and Plaintiff's motion for class certification is GRANTED in part and DENIED in part.

---

[1] The Complaint also brought a claim for unjust enrichment.  Plaintiff dismissed that claim at the motion to dismiss stage.  *See* Class Cert. Br. at 2 n.3

## BACKGROUND

### I.    FACTS AND PROCEDURAL HISTORY

#### A.  Factual Background

In 1984, when he was 40 years old, Plaintiff purchased a universal life insurance policy that is currently owned and administered by Defendant.  S*ee* Dkt. No. 1 ("Complaint" or "Compl.") ¶ 13; Dkt. No. 120 ("Class Cert. Br.") at 8 n.19.  Plaintiff's policy is a product titled "ULX."  *See* Dkt. No. 134-1 ("Pfeifer Rep.") ¶ 16.

Universal life insurance policies have unique funding structures.  Rather than paying a fixed amount, policyholders can use the policy both as a savings or investment vehicle and as a source of death benefits.  *See* Compl. ¶ 2.  To fund the policies, policyholders pay premiums to an insurer.  *See* Pfeifer Rep. ¶ 31.  Those premiums are credited to the policyholder's "Account Value."  *Id.*  Periodically (typically each month), insurers deduct certain charges from the Account Value.  *Id.* ¶ 33.  One such deduction is a cost of insurance ("COI") charge.  *See* Compl. ¶ 3.  COI charges are based on a COI rate set by the insurer.  *See* Pfeifer Rep. ¶ 41.  Insurers determine the COI charge by multiplying the COI rate by certain account values.  *See* Pfeifer Rep. ¶ 42.  Plaintiff's insurance policy contained contractual limitations on how Brighthouse could determine the COI rate:  Plaintiff's policy states "we will base [COI rates] only on our future outlook for mortality and expenses."  Compl. ¶ 32 (emphasis in original).  Plaintiff's policy also contained a provision requiring Brighthouse to "determine any change in the cost of insurance rates . . . at least once in every five contract years."  *Id.*

Plaintiff alleges that Defendant breached the policy in two ways.  First, Plaintiff claims that Defendant has not decreased COI rates even as societal life expectancy has improved and thus did not base COI charges "only on our future outlook for mortality and expenses."  *See* Compl. ¶ 32; Dkt. No. 151 ("Class Cert. Rep.") at 1.  The parties refer to this claim as the

"failure to decrease" claim.  Second, Plaintiff alleges that Defendant breached the requirement to review COI rates every five years because it did not conduct any reviews between 1994 and 2013.  *See* Class Cert. Br. at 4.  The parties refer to this claim as the "failure to review" claim.  In addition to breach of contract claims, Plaintiff also brings a claim for breach of the implied covenant of good faith and fair dealing, alleging that Defendant violated Plaintiff's reasonable commercial expectation that Defendant would lower the Cost of Insurance if forecasts of mortality improved.  *See* Compl. ¶ 72.

Brighthouse administers 22 universal life insurance policies that contain the contractual language "we will base [COI rates] only on our future outlook for mortality and expenses."  *See* Class Cert. Rep. at v n.1.  Plaintiff seeks to certify a class of all policyholders whose policies contain that provision and were in force at the time the Complaint was filed.  *Id.*

**B.  Procedural History**

Plaintiff initiated this action on behalf of himself and similarly situated owners of universal life insurance policies on April 6, 2021.  *See* Compl.  Defendant filed a motion to dismiss the Complaint on June 29, 2021, which Judge Ronnie Abrams dismissed on February 22, 2022.  *See* Dkt. No. 30.  On February 26, 2024, the case was reassigned to the undersigned.  All discovery concluded on August 13, 2024.  *See* Dkt. No. 87.  Both parties moved to strike or exclude the testimony of the opposing party's experts.  *See* Dkt. Nos. 86, 133, 136.  On September 12, 2024, Plaintiff moved for certification of the case as a class action.  *See* Dkt. No. 119.

## DISCUSSION

## I.    MOTIONS TO EXCLUDE EXPERT TESTIMONY

### A.  Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702,

which provides that a witness "who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "The Second Circuit has distilled Rule 702's requirements into three broad

criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact."  *In*

*re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018).

The party seeking to introduce an expert's testimony bears the burden of establishing the

testimony's admissibility by a preponderance of the evidence.  *Republic of Turkey v. Christie's*

*Inc.*, 425 F. Supp. 3d 204, 220 (S.D.N.Y. 2019).

The Court's role in evaluating expert testimony is to "act[] as a gatekeeper to 'ensur[e]

that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"

*Christie's Inc.*, 425 F. Supp. 3d at 220 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579, 597 (1993)).  "The ultimate object of the Court's gate-keeping function is to 'make certain

that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field.'"  *Roman v. Sprint Nextel Corp.*, No. 12-CV-00276 (VEC), 2014 WL

5026093, at *3 (S.D.N.Y. Sept. 29, 2014) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

### 1. Qualifications

The adequacy of an expert's qualifications is "determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the actual subject matter of the witness's testimony." *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018) (internal references omitted). In assessing whether an expert is qualified, "the court's focus should be on 'whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'" *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (quoting *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, No. 12-CV-05803 (JLG), 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013)). "Courts within the Second Circuit 'have liberally construed expert qualification requirements' when determining if a witness can be considered an expert." *Crown Cork & Seal*, 2013 WL 978980, at *2 (quoting *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, No. 99-CV-01725, 2003 WL 1878246, at *1 (S.D.N.Y. Apr. 11, 2003)).

### 2. Reliability

"To warrant admissibility . . . it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). In *Daubert*, the Supreme Court set forth the following factors as relevant to assessing reliability:

> (1) whether the expert's technique or theory can be or has been tested;
> (2) whether it has been subjected to peer review and publication;
> (3) whether there is a high error rate for the expert's technique, and whether there are 'standards controlling the technique's operation'; and
> (4) whether the expert's technique or theory is generally accepted by the relevant scientific community.

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) (citing *Daubert*, 509 U.S. at 592–94). These factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593. Rather, the Court "should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire*, 526 U.S. at 152.

Certain characteristics of expert testimony will render it unreliable. If expert testimony is "speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," then it must be excluded. *Nachimovsky v. Nike, Inc.*, No. 22-866, 2023 WL 4504461, at *1 (2d Cir. July 13, 2023) (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009)). Similarly, if "the gap between the data and the conclusion drawn by the expert from that data . . . is simply too great," then the Court may exclude the expert's testimony. *Id.* (quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017)).

That said, "the rejection of expert testimony is the exception rather than the rule . . . and the Second Circuit requires that courts assessing the reliability of expert testimony be mindful of the presumption of admissibility of evidence." *Cohalan v. Genie Indus., Inc.*, No. 10-CV-02415 (JMF), 2013 WL 829150, at *5 (S.D.N.Y. Mar. 1, 2013) (internal references omitted). Contentions "that [an expert's] assumptions are unfounded" other than those described above "go to the weight, not the admissibility, of the testimony." *Id.* (quoting *Bacardi & Co. v. N.Y. Lighter Co., Inc.,* No. 97-CV-07140 (JS) (VVP), 2000 WL 298915, at *2 (E.D.N.Y. Mar. 15, 2000)). Pursuant to this liberal standard, "only flaws in reasoning or methodology 'large enough that the expert lacks good grounds for his or her conclusions'

6

warrant exclusion; otherwise, the court should admit the evidence." *Roman*, 2014 WL 5026093, at *4 (quoting *Amorgianos*, 303 F.3d at 267). "[O]ur adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* (internal references omitted).

### 3. Relevance

In addition to evaluating whether expert testimony complies with the requirements of Rule 702, "courts must also determine whether the proffered evidence is relevant" pursuant to Federal Rules of Evidence 401 and 402, "and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice" pursuant to Rule 403. *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021); *see also United States v. Dukagjini*, 326 F.3d 45, 51–52 (2d Cir. 2003) ("Of course, expert testimony, like other forms of evidence, 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'") (quoting Fed. R. Evid. 403). Additionally, Rule 702's "requirement that expert testimony 'assist the trier of fact' goes primarily to relevance." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (quoting *Daubert*, 509 U.S. at 591). To that end, "'expert testimony that usurps either the role of the trial judge' in determining 'the applicable law or the role of the [trier of fact] in applying that law to the facts before it' is inadmissible because it 'by definition does not aid the [trier of fact] in making a decision.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 469 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

### 4. *Daubert* Motions at the Class Certification Stage

"Neither the Supreme Court nor the Second Circuit has definitely decided whether the *Daubert* standard governs the admissibility of expert evidence submitted at the class certification

stage." *Id.* at 470 (quoting *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 148 (S.D.N.Y. 2015)). However, "District courts in this Circuit regularly subject expert testimony at the class certification stage to *Daubert*, but they limit the inquiry at that stage to 'whether or not the expert reports are admissible to establish the requirements of Rule 23.'" *City of Philadelphia v. Bank of Am. Corp.*, No. 19-CV-01608 (JMF), 2023 WL 6160534, at *3 (S.D.N.Y. Sept. 21, 2023), *aff'd sub nom. City of Philadelphia v. Banc of Am. Sec. LLC*, No. 24-297, 2025 WL 2180607 (2d Cir. Aug. 1, 2025) (quoting *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10-CV-08086 (JMF), 2013 WL 5658790, at *13 (S.D.N.Y. Oct. 17, 2013)); *see also City of Phila. v. Banc of Am. Sec. LLC*, No. 24-297, 2025 WL 2180607, at *3 (2d Cir. Aug. 1, 2025) (affirming the district court's application of a "*Daubert* analysis *to the extent that* Defendants seek to exclude testimony relevant to the pending class certification motion") (internal reference omitted).

Here, the Court has considered the expert reports in their entirety in evaluating the motion for class certification under Rule 23, with due consideration for the teachings of *Daubert* regarding reliability but without needing to consider, in that context, the potential for jury confusion. However, the rulings and analysis that follow are based on the admissibility standard set forth in Federal Rule of Evidence 702 and determine the use of the proposed experts at summary judgment and at trial, subject to any motions in limine that may further limit any proposed testimony. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 68 (S.D.N.Y. 2001) ("The standard for admissibility of evidence pursuant to Rule 702 is the same at the summary judgment stage as it is at trial.").

## B. Defendant's Motions to Preclude Plaintiff's Experts

Plaintiff proffered the opinion of two expert witnesses: Terry M. Long and Dr. James Carson. Defendant seeks to exclude Mr. Long's expert opinion in its entirety and portions of Dr. Carson's report on the grounds that they are inadmissible under Rule 702 and *Daubert*. For the

reasons set forth below, the Court DENIES Defendant's motion as to Mr. Long and GRANTS in part and DENIES in part Defendant's motion as to Dr. Carson.

### 1. Terry M. Long

Terry M. Long is an actuary with professional experience in the life insurance and reinsurance industries. *See* Expert Report Prepared by Terry M. Long ("Long Rep."), Dkt. No. 140-1 ¶¶ 1, 3. Plaintiff proffered Mr. Long's testimony "to opine on the issue of damages . . . and to provide a methodology for computing class-wide damages suffered by the class." Dkt. No. 149 at 2. Mr. Long's testimony concluded that the COI rates charged by Brighthouse for all policies held by members of Plaintiff's proposed class were inflated by 8%. *See* Long. Rep. ¶ 30. Based upon this conclusion, Mr. Long determined that the putative class was owed approximately $49.6 million in damages. *See Id.* ¶ 47; Dkt. No. 140-2 at 4, n.1. In his initial report, Mr. Long did not disclose the methodology he used to arrive at the 8% figure. *See* Dkt. No. 128 at 5:4–5. He subsequently testified that he derived the 8% figure as follows: First, Mr. Long developed a "COI adjustment factor" of 3:1. Dkt. No. 146-6 ("Long Dep. Tr.") at 120:2– 123:7. The 3:1 ratio was derived from a Brighthouse document ("Martin-40") which, according to Mr. Long, demonstrated that each 10% reduction in COI rates resulted in a 30% reduction in profitability. *Id.* at 119:21–123:7. Mr. Long then applied the COI adjustment factor to determine the reduction in COI rates necessary to achieve the products' profitability projections at the time of each product's original pricing or last COI rate determination. *See* Dkt. No. 135-3 at ¶ 20. To do so, Mr. Long relied on a document similar to Martin-40, Martin_685633, that contained profit analyses prepared in connection with Brighthouse's 2019 COI rate review. *Id.* Based on the data in Martin_685633, Mr. Long determined that profitability for the class policies needed to be reduced by 20% for the products to return to their original profitability projections. *Id.* ¶ 22. Mr. Long then divided 20% by the 3:1 COI adjustment factor to find the corresponding

reduction in COI required to return the policies to their originally profitability projections. Long Dep. Tr. at 126:11–127:3. He found that an approximately 6.79% reduction in COI rates would achieve original profitability projections. *Id.*; Dkt. No. 134-4 ¶ 23. Mr. Long then averaged the 6.79% figure with a 10% COI reduction shown in Martin_40 to arrive at 8%. Long Dep. Tr. 69:15–70:15. Plaintiff alleges that Mr. Long used this methodology because "[f]or the few reviews it performed, Brighthouse used profitability analysis modeling." Dkt. No. 149 at 12.

Defendant contends that Mr. Long's report should be excluded as unreliable, primarily because the documents Mr. Long relied on apply to only a small percentage of the 22 products owned by putative class members. *See* Dkt. No. 139 at 8; Dkt. No. 162 at 1–5. Specifically, Defendant explains that Martin-40, the document from which Mr. Long derived the 3:1 COI adjustment factor and 10% COI reduction figure, reflected a "hypothetical COI Rate reduction" for two of the 22 products at issue: ULX and ULXP. Dkt. No. 139 at 9; Dkt. No. 135-3 ¶ 10. Similarly, the document that Mr. Long used to arrive at the 6.79% figure concerned the same policies addressed in Martin-40 as well as two additional policies: TUL91 and ULXP88. Dkt. No. 139 at 10. Thus, the 8% figure was derived from data that concerned only four of the 22 products at issue, which, according to Defendant, renders the analysis unreliable. *Id.*

For reasons set forth in section III(B)(1) *infra*, Defendant's primary criticism is inapplicable to the next chapter of this case (be it summary judgment or trial) because the class—as modified by the Court—includes only holders of the policies upon which Mr. Long based his analysis. Specifically, the key document upon which Mr. Long relied, Martin-40, "contains a hypothetical analysis of only two In-Scope Products: ULX and ULXP." *Id.* at 9. The Court has modified the class definition below to include only holders of the ULX or ULXP policies. Thus, that Mr. Long only relied almost exclusively on data concerning these policies does not render

his opinion unreliable, either for the liability phase of the case (now limited to holders of the

ULX or ULXP policies) or for determining whether Plaintiff has satisfied the requirements of

Rule 23. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 471

(holding that the *Daubert* inquiry at the class certification stage "is guided by the purpose for

which the evidence is introduced—establishing the various class certification requirements.").

Defendant's criticism that Mr. Long's report does not comply with actuarial guidelines is

also inapplicable for substantially the same reasons. Defendant alleges that the report's

methodology does not comply with actuarial guidelines primarily because Mr. Long extrapolated

data concerning two policies to make assumptions about all 22 policies at issue in Plaintiff's

proposed class. *See* Dkt. No. 162 at 5–6. However, the only policies that are now at issue are

the two policies upon which Mr. Long primarily based his analysis. Thus, whether extrapolating

that data to other policies complied with actuarial guidelines is no longer relevant because those

policies are outside of the scope of this litigation going forward.

Defendant's remaining arguments go to the weight rather than admissibility of Mr.

Long's testimony. First, Defendant argues that Mr. Long's testimony is inadmissible because his

determination that a single percentage reduction in COI rates could apply to all of the policies at

issue was a "preordained conclusion," Dkt. No. 139 at 12, that reflects the "essence of

unverifiable subjectivity," *id.* (quoting *Nimely*, 414 F.3d at 399). The record contradicts this

allegation: Mr. Long specifically testified that he would have changed his methodology if

"something came up to show us that [we] shouldn't [use a single scalar]." Dkt. No. 149 at 17

(citing Long Dep. Tr. at 129:24–130:5). Because Mr. Long considered alternate methodologies

and concluded that using a single percentage was appropriate, his testimony does not rise to the

level of being "speculative or conjectural or based on assumptions that are so unrealistic and

contradictory as to suggest bad faith" that would warrant exclusion. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (internal references omitted). Defendant has ample basis on which to cross Mr. Long about the suitability or persuasiveness of this methodology, and that is the proper arena in which to test Mr. Long's conclusions.

Second, Defendant argues that Mr. Long's opinion is unreliable for two additional reasons: (i) that he relied on data from 2019 to reach the conclusion that Brighthouse was required to lower its COI rates as early as 2013, *see* Dkt. No. 139 at 14, and (ii) he determined that he could ignore Brighthouse's expense assumptions and thus failed to incorporate them into his analysis. *See id.* at 11 n.5. Rather than rendering Mr. Long's testimony inadmissible, the alleged "inaccuracies, imprecision, or fallacies" in Mr. Long's testimony are "properly addressed through vigorous cross-examination." *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 255 (S.D.N.Y. 2022), *on reconsideration in part*, No. 16-CV-740 (JMF), 2022 WL 3018104 (S.D.N.Y. July 29, 2022) (internal references omitted); *see also N. Am. Soccer League LLC v. United States Soccer Fed'n, Inc.*, No. 17-CV-5495 (BMC), 2024 WL 2959967, at *9 (E.D.N.Y. June 12, 2024) (declining to exclude expert testimony on the grounds that it "improperly relied on data and events that occurred after the date of the challenged conduct"); *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 306 (S.D.N.Y. 2015) (stating that contentions that an expert's "assumptions are unfounded go to the weight, not the admissibility, of the testimony.") (quoting *Zerega Ave. Realty Corp.*, 571 F.3d at 214)). Accordingly, Defendant's motion to exclude Mr. Long's testimony is DENIED.

### 2.     Dr. James M. Carson

Dr. James M. Carson is a professor of insurance at the University of Georgia. *See* Dkt. No. 150-1 ("Carson Rep.") ¶ A1. Plaintiff proffered Dr. Carson's testimony to provide insight on the customs and practice of the insurance industry. *See* Dkt. No. 149 at 22. In his expert

report, Dr. Carson addressed Brighthouse's mortality expectations and expense charges as well as class-wide damages. *See* Dkt. No. 150-1. Defendant seeks to exclude portions of Dr. Carson's proposed testimony on the grounds that those portions are unhelpful, unreliable, and impermissibly provide legal opinions. *See* Dkt. No. 139 at 14. The Court agrees that certain of Dr. Carson's opinions should be excluded as impermissibly providing legal opinions and conclusions. Specifically, the opinions proffered in paragraphs 15, 18 (opinions 1-3, 5, 7), 42, 43, and 45 of Dr. Carson's report (Dkt. No. 150-1) and paragraphs 10–13, 15, 22, and 24 of his rebuttal report (Dkt. No. 150-4) impermissibly offer legal conclusions by (i) stating that Brighthouse breached its contract with putative class members and (ii) interpreting the insurance contracts at issue in this litigation.[2] *See, e.g.*, Dkt. No. 150-1 ¶ 15 ("Brighthouse UL and VUL policies levied charges for costs of insurance (COI) rates that were higher than what were promised, in breach of express insurance contract language . . . ."); *Id.* ¶ 42 ("In the but-for world, Brighthouse does not fail to reduce COIs as required by the policy language."). It is an "axiomatic principle" that experts cannot provide "legal opinions or conclusions." *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 543 (S.D.N.Y. 2024) (internal references omitted); s*ee also Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 448 (S.D.N.Y. 2006) (precluding an expert from testifying because his opinion

---

[2] The Court finds that the statements in paragraphs 18 (opinion 7), 42, 43, and 45 as written express legal conclusions. However, if the opinions were phrased in the conditional (i.e. rather than stating "Brighthouse should have reduced COIs for the relevant policies, and that its failure to do so resulted in reduced cash values . . . ", Dr. Carson had stated "**if** Brighthouse should have reduced COIs for the relevant policies **its** failure to do so **would have** resulted in reduced cash values . . .") such an opinion would be permissible on the grounds that it can assist the jury to understand complex insurance issues that would not be apparent to the ordinary juror.

"clearly impinges upon the province of the Court, in so far as he essentially proffers his own version of contractual interpretation"). Thus, the portions of Dr. Carson's testimony that provide legal conclusions are inadmissible.

The Court also excludes the opinions proffered in parts of paragraphs 17 (starting at the second sentence), 19, 33, 35 (the statement "and also by Brighthouse"), and 37–41 of Dr. Carson's report. These components of Dr. Carson's report discuss Brighthouse's calculation of COI rates, and the damages incurred by the putative class. For these opinions, Dr. Carson either provides no citation or cites only to Mr. Long's testimony. *See, e.g.*, Dkt. No. 150-1 ¶ 33 (asserting, without any citation, that "[t]he Brighthouse UL policies owned by members of the proposed class applied Costs of Insurance charges (COIs) in the same manner across all policies"); *Id.* ¶ 19 (basing the conclusion that putative class members have incurred money damages on Mr. Long's report). Where, as here, an expert's opinion is not "based on sufficient facts or data," Fed. R. Civ. P. 702(b), or "merely recite[s] another expert's opinion," *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015), the testimony is not admissible.

On the other hand, the Court denies Defendant's request to exclude paragraphs 16, 25–26, 34–36, and 44 of Dr. Carson's testimony as well as paragraphs 16–21 and 25 of his rebuttal report. Defendant contends that this testimony should be excluded because it discusses nationwide and industry-wide mortality trends and "Plaintiff and Long have disavowed reliance on the types of mortality data cited in Carson's Reports." Dkt. No. 162 at 8. In support of that argument, Defendant points to Plaintiff's discovery responses in which Mr. Martin denied alleging that "Brighthouse should have decreased the COI Rates in the COI Rate Scales applicable to the In-Scope Policies based on historical mortality trends in the general U.S.

14

population." Dkt. No. 139 at 15. Defendant similarly points to Mr. Long's testimony in which

he stated that his analysis was not based on U.S. population mortality rates. *Id.* Contrary to

Defendant's assertion, these statements do not render nationwide and industry-wide mortality

data entirely irrelevant to this action. As Plaintiff explains, the data is relevant because "material

deviation[s] from industry would be highly suspect" in light of the scope of the policies at issue.

Dkt. No. 149 at 23. Relevance is not a high bar, and in the context of Dr. Carson's report and his

primary value as an industry expert, these sections clear it. Defendant's criticisms are best left to

the proving ground of cross-examination.

### C. Plaintiff's Motions to Strike and Exclude Defendant's Experts

Defendant proffered the opinion of expert witness Timothy Pfeifer and the rebuttal

opinion of Dr. Bruce A. Strombom. Plaintiff seeks to exclude portions of Mr. Pfeifer's

testimony on the grounds that they are inadmissible under Rule 702 and *Daubert* and to strike

Dr. Strombom's rebuttal testimony pursuant to Federal Rules of Civil Procedure 26(a)(2)(D)(ii)

and 37(c)(1). For the reasons set forth below, the Court GRANTS in part and DENIES in part

Plaintiff's motion as to Mr. Pfiefer's testimony and DENIES Plaintiff's motion as to Dr.

Strombom's testimony.

#### 1.    Timothy Pfeifer

Timothy Pfeifer is a Consulting Actuary who specializes in the design, pricing, and

marketing of life insurance products. *See* Dkt. No. 135-1 ¶¶ 1, 10. Plaintiff seeks to preclude

certain portions of Mr. Pfiefer's testimony on the grounds that they impermissibly provide legal

conclusions. *See* Dkt. No. 135 at 5–12. The majority of the testimony that Plaintiff seeks to

preclude does not require preclusion on these grounds. Mr. Pfeifer's testimony generally does

not seek to interpret the insurance policies at issue as to their legal effect. Rather, the testimony

explains how an actuary would conduct COI rate assessments for the policies at issue, and the

factors that actuaries would be permitted to consider in so doing. *See, e.g.*, ¶ 41 ("Typically, insurers establish COI rate scales based on the insurer's future expectations of mortality, expenses, investment performance, policy persistency, and other factors, depending on the specific policy language."). The testimony thus falls within the category of industry customs and practice testimony, which the parties agree is admissible. *See* Dkt. No. 145 at 10; Dkt. No. 149 at 20; *see also Novartis Pharma AG v. Incyte Corp.*, No. 20-CV-00400 (GHW), 2024 WL 3608338, at *11 (S.D.N.Y. July 29, 2024) ("[I]t is of course common for testimony regarding the 'customs and practices' in a particular industry to be the subject of expert testimony.") (quoting *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013)). On the other hand, the Court agrees that ¶ 103 of Mr. Pfeifer's report impermissibly opines on an "ultimate issue for the fact finder to determine," *Am. Home Assur. Co.*, 462 F. Supp. 2d at 454, by stating "there is nothing in the In-Scope Policy Forms that requires an adjustment of COI rates," and will exclude that statement.

   Plaintiff's remaining objections go to the weight rather than admissibility of Mr. Pfeifer's testimony. Plaintiff states that Mr. Pfeifer misstates certain contractual language in the policies at issue, *see* Dkt. No. 135 at 5–7, but "inaccuracies, imprecision, or fallacies" are "properly addressed through vigorous cross-examination," and thus go to the weight rather than admissibility of Mr. Pfeifer's testimony. *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d at 255. Plaintiff also argues that the methodologies used in Mr. Pfeifer's supplemental report should be excluded because they differ from the methodologies Brighthouse used. *See* Dkt. No. 135 at 12–15. However, alleged faults in Mr. Pfeifer's use of a particular methodology again "go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). Furthermore, Mr. Pfeifer was not required to use the same

methodology as Brighthouse in preparing his expert report.  It is well established that an expert

may "rely on new methodologies 'for the purpose of rebutting or critiquing the opinions of [the

opposing party's] expert witness.'"  *Hart v. BHH, LLC*, No. 15-CV-04804, 2018 WL 3471813,

at \*9 (S.D.N.Y. July 19, 2018) (quoting *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp.

2d 314, 326 (S.D.N.Y. 2009)).

      Finally, Plaintiff argues that Mr. Pfeifer's supplemental report goes beyond the scope of

supplementation permitted by the Court because it criticizes Mr. Long's original report for

failing to explain his methodology.  The Court disagrees.  In keeping with the Court's directive,

Mr. Pfeifer's report properly responded to the information disclosed at Mr. Long's deposition

because it was not until Mr. Long's deposition that Defendant learned that Mr. Long used a

specific methodology that he had not disclosed in his original report.  *See* Dkt. No. 145 at 19–20;

Dkt. No. 128 at 12:9–18 (Allowing "supplemental reports responding only to the methodology

used to arrive at the 8 percent conclusion, as illuminated in Mr. Long's deposition").

Accordingly, Mr. Long's disclosure of the methodology used to identify the 8% figure was

inherently acknowledgement that the methodology had not been disclosed earlier, in Mr. Long's

original report, and so the Court declines to preclude Mr. Pfeifer's supplemental report on that

basis.

### 2.     Dr. Bruce A. Strombom

      Dr. Bruce A. Strombom is a Senior Advisor at Analysis Group, Inc. and has a Ph. D. in

economics.  Dkt. No. 93-1 ¶ 1.  He is a rebuttal witness retained by Defendant "to provide

rebuttal opinions to Mr. Long's damages opinions and calculations as well as certain opinions

put forth by Dr. Carson."  *See* Dkt. No. 92 at 6.  Plaintiff alleges that Dr. Strombom's report

exceeds the scope of rebuttal testimony permitted under Federal Rule of Civil Procedure

26(a)(2)(D) and should be precluded under Rule 37(c)(1) because his identity was not timely disclosed. *See* Dkt. No. 86 at 1–2. The Court addresses each argument in turn.

Rule 26(a)(2)(D)(ii) allows a party to submit expert testimony within 30 days after the opposing party's initial expert disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified" in the opposing party's expert testimony. Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiff objects to the report on the basis that Dr. Strombom dedicated a significant portion of the report to explaining funding patterns of life insurance policyholders. *See* Dkt. No. 94 at 3. According to Plaintiff, this testimony improperly presents new defenses rather than providing rebuttal testimony. *See* Dkt. No. 86 at 6.

The Court disagrees. Dr. Strombom's report seeks to rebut Plaintiff's experts on damages. *See* Dkt. No. 92 at 6. Plaintiff's experts both concluded that damages can be calculated in a uniform way on a class-wide basis. *See, e.g.,* Long Rep. ¶ 30 (concluding that COI rates charged by Brighthouse to all class policies were "inflated by 8%"); Carson Rep. ¶ 17 ("All of the life insurance Policies of the members of the proposed class apply COIs in the same manner, and standard methodologies can be used to calculate damages for each member of the class, all of whom incurred the excess charges for the cost of their life insurance coverage."). Dr. Strombom's report seeks to rebut that conclusion by asserting that any damages calculation "requires careful evaluation of the various ways in which policy owners fund their policies." Dkt. No. 94-2 ("Strombom Rep.") ¶ 82; *see also id.* ¶ 90 (concluding that "to properly model purported damages from the allegedly inflated COI rates – one needs to consider how individual policy owners would have responded to the lower COI rates," which necessarily involves "a policy-by-policy and month-by-month" basis). Although Dr. Strombom dedicated a significant portion of his report to discussing funding patterns for universal life insurance accounts, such

testimony was necessary to contextualize his rebuttal argument. Dr. Strombom's explanation of funding patterns is thus not a new defense but rather necessary context to explain the basis for his rebuttal to Plaintiff's expert testimony on damages. Because Dr. Strombom's report concerns the same subject matter of Plaintiff's expert reports—whether damages can be calculated on a class-wide basis—his testimony falls within the scope of permissible rebuttal testimony under Rule 26(a)(2)(D)(ii).

The Court also declines to strike Dr. Strombom's report pursuant to Federal Rule of Civil Procedure 37(c)(1). Rule 37 provides, in relevant part, that a party may not use the information submitted by a witness if the party did not identify the witness or provide information as required under Rule 26(a). Rule 26(a)(2)(D), in turn, requires a party to make expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The Rule also sets forth a default schedule for disclosure of expert testimony "absent a stipulation or a court order." *Id.* Here, the Court ordered the parties to serve rebuttal expert reports by June 28, 2024, *see* Dkt. No. 82, and Dr. Strombom's report was submitted on June 28, 2024, *see* Strombom Rep. Accordingly, there is no basis to preclude Dr. Strombom's report as untimely under Rule 37(c)(1).

## II.   CLASS CERTIFICATION

### A. Legal Standard

To maintain a class action, the party moving for class certification must demonstrate compliance with Federal Rule of Civil Procedure 23. First, the moving party must establish compliance with Rule 23(a) by demonstrating that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the

class." *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023). These requirements are commonly referred to as "numerosity, commonality, typicality, and adequate representation." *Id.* In this Circuit, Rule 23(a) also contains "an implied requirement of ascertainability. *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 70 (S.D.N.Y. 2022). Second, the moving party must demonstrate that one of the three conditions of Rule 23(b) is met. *Elisa W.*, 82 F.4th 115 at 122.

District Courts are permitted to "implement management strategies tailored to the particularities of each case" for cases brought as class actions. *In re Petrobras Sec.*, 862 F.3d 250, 274 (2d Cir. 2017). These strategies include "modifying class definitions," "bifurcate[ing] the proceedings to home in on threshold class-wide inquiries," and "sever[ing] claims not properly adjudicated on a class-wide basis to isolate key common issues." *Id.* If the court decides to sever claims that are not suitable to class wide adjudication, the court may certify a class only as to particular claims. *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *5 (S.D.N.Y. Aug. 13, 2020) ("[I]f an action includes multiple claims, one or more of which might qualify as a certifiable claim, the court may separate such claims from other claims in the action and certify them under the provisions of subsection (c)(4) of Rule 23") (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 464)).

### B. Discussion

Plaintiff seeks to certify a nationwide class of over 50,000 policyholders who owned 22 different policies. Plaintiff seeks to certify the class as to three claims: (i) Defendant breached its contracts with putative class members by failing to decrease COI rates; (ii) Defendant breached its contracts with putative class members by failing to review COI rates every five years; and (iii) Defendant breached the implied covenant of good faith and fair dealing. For the reasons set

forth below, the Court finds that class treatment is appropriate only as to Plaintiff's breach of contract claim based on a failure to decrease COI rates and only for a modified class consisting of policyholders of Plaintiff's policy (ULX) and the ULXP policy.

For Plaintiff's failure to review claim and his good faith and fair dealing claim, the Court's analysis begins and ends with Rule 23's typicality and predominance requirements, respectively. Thus, pursuant to Federal Rule of Civil Procedure 23(c)(4), the Court GRANTS Plaintiff's motion for class certification as to his failure to decrease claim for the modified class below and DENIES Plaintiff's motion for class certification as to his failure to review claim and his good faith and fair dealing claim.

### 1. Class Definition

Plaintiff seeks to certify the following class:

> All persons who own or owned a UL insurance policy in any of the 50 states, Puerto Rico or any United States territory issued and/or currently administered by Brighthouse Life Insurance Company that contains the following language: "We will base these [cost of insurance] rates only on our future outlook for mortality and expenses."

Dkt. No. 119 at 1. The class consists of policyholders for 22 different policies whose policies were in force as determined by the applicable statute of limitations at the date of filing the complaint in this case. *See* Class Cert. Rep. at v n.1. The Court is not bound to this overbroad class definition and may modify it *sua sponte*. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 11945533, at *1 ("A court is not bound by the class definition proposed in the complaint . . . .") (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)); *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015). "[T]he typical relief for an overbroad class is, if possible, redefinition." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *1. Accordingly, the Court modifies the class definition to encompass the following class:

21

All persons who own or owned a UL insurance policy **with the product codes ULX or ULXP** in any of the 50 states, Puerto Rico or any United States territory issued and/or currently administered by Brighthouse Life Insurance Company that contains the following language: "We will base these [cost of insurance] rates only on our future outlook for mortality and expenses."[3]

### 2. Rule 23(a) Requirements

#### i. Numerosity

The modified class easily meets the numerosity requirement. "Although there is no magic number of class members needed to satisfy numerosity . . . numerosity is generally 'presumed at a level of 40 [or more] members.'" *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). The class has far more than 40 members; according to Mr. Pfeifer's expert report, there are 17,694 ULX products, 1,347 of which were in force between June 2022 and February 2023. *See* Pfeifer Rep. ¶ 89. Additionally, there are 20,769 issued ULXP products, 2,122 of which were in force between June 2022 and February 2023. *Id.* Given the number of policies at issue "joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Accordingly, the numerosity requirement is satisfied.

#### ii. Commonality

"The commonality requirement demands that there be 'questions of law or fact common to the class.'" *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 37 (S.D.N.Y. 2020) (quoting Fed. R. Civ. P. 23(a)(2)). To establish commonality, a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common

---

[3] In keeping with the original class definition, the class only consists of policyholders whose policy was in force as determined by their applicable state statute of limitations at the date of filing the Complaint (April 6, 2021) and excludes: any entity in which Brighthouse has a controlling interest; any of the officers, directors, or employees of Brighthouse; the legal representatives, heirs, successors, and assigns of Brighthouse; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A claim is capable of classwide resolution if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

Here, Plaintiff's claim for breach of contract based on Defendant's failure to decrease COI rates meets the commonality requirement for the revised class. Plaintiff's claim depends upon a common contention: that, under the policies at issue, Brighthouse was required to decrease COI rates based upon improved mortality and expenses. The resolution of that contention "is central to the validity" of Plaintiff's breach of contract claim and would resolve the claim classwide "in one stroke." *Dukes*, 564 U.S. at 350. However, this contention is only "capable of classwide resolution" as to the narrowed class of holders of ULX and ULXP policies. That is because there is no clear common "conduct or practice" by Defendant that applies to all of the 22 policies at issue under Plaintiff's proposed class definition. The 22 policies do not have uniform COI rate scales, and their COI rates are not based on the same underlying assumptions. *See* Dkt. No. 141 ("Class Cert. Opp.") at 5. Thus, whether Defendant was required to lower COI rates is a policy-specific inquiry. Because the record establishes that COI rates for the ULX policy, which Plaintiff owned, and the ULXP policy, were assessed together and had comparable underlying assumptions, the narrowed class of holders of only those two policies would not require a more individualized inquiry at a level that might defeat commonality.

Comparing Plaintiff's allegations to cases in this Circuit in which courts have certified classes in breach of contract cases based on COI rates is instructive as to why the broader proposed class cannot meet the commonality requirement.   In *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374 (S.D.N.Y. 2019), plaintiffs alleged that an insurance company breached its contract by basing a 2016 COI rate increase on considerations that were not permitted under the class members' policies.  *See id.* at 380.  The court found that commonality was met for the putative class because "the decision on a COI rate increase was made based on the same analysis for all putative class members."  *Id.*  Underpinning the court's ruling was the fact that the "alleged breach is not assertedly based on thousands of distinct decisions . . . which would all require separate consideration."  *Id.* (quoting *Feller v. Transam. Life Ins. Co.*, 16-CV-01378 (CAS) (AJW), 2017 WL 6496803, at \*7 (C.D. Cal. Dec. 11, 2017)).  Similarly, in *Fleisher v. Phoenix Life Ins. Co.*, the court found that the commonality requirement was satisfied where the central issue in the case was whether a specific 2011 COI increase violated the terms of the policy owned by members of the class.  *See* No. 11-CV-08405 (CM), 2013 WL 12224042, at \*9 (S.D.N.Y. July 12, 2013).  In contrast, Plaintiff does not point to a singular instance of breach, but rather a generalized argument that, during the applicable period, Defendant breached a variety of insurance contracts by failing to decrease the COI rate.  Because the factors underlying the COI rates for the 22 policies in the broader class are not uniform, there is no single action by which Plaintiff alleges that Defendant breached the contract.  Accordingly, determining whether Defendant breached the contract "require[s] separate consideration[s]" for each policy.  *Hanks*, 330 F.R.D. at 380 (quoting *Feller*, 2017 WL 6496803 at \*7); *see also* Class Cert. Opp. at 21 ("Whether there was a breach of contract would turn on whether a COI Rate decrease, increase, or decision to maintain the then-current COI Rate Scale for each particular set

of In-Scope Policies within every In-Scope Product was justified."). This is not the case for the ULX and ULXP policies which, based on the record, have similar underlying assumptions for expenses and mortality. *See, e.g.*, Dkt. 134-2 ¶¶ 62, 63. Accordingly, the commonality requirement is satisfied for the narrowed class as to the failure to decrease claim.[4]

### iii.    Typicality

Typicality requires that "the claims of the class representatives be typical of those of the class" and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Madanat v. First Data Corp.*, 282 F.R.D. 304, 313 (E.D.N.Y. 2012) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993)).

Here the typicality requirement is satisfied as to Plaintiff's failure to decrease claim. That claim relies upon "the same course of events" (Brighthouse's COI determinations in the relevant time period) and "makes similar legal arguments to provide the defendant's liability" (that Defendant breached its contract with Plaintiff and the putative class members by failing to

---

[4] The Court does not analyze each requirement of Rule 23 for Plaintiff's failure to review and breach of the implied covenant of good faith and fair dealing claims because those claims cannot satisfy the typicality and predominance requirements, respectively. *See, e.g.*, *Diverse Partners, LP v. AgriBank, FCB*, No. 16-CV-9526 (VEC), 2019 WL 4305008, at *1 (S.D.N.Y. Sept. 11, 2019) ("Because the Court finds that Plaintiffs' proposed class fails to satisfy Rule 23(b)(3)'s predominance requirement and that class certification is therefore inappropriate, the Court need not and does not address whether Rule 23(b)(3)'s superiority requirement or Rule 23(a)'s requirements have been satisfied.").

decrease COI rates). *Marisol A.*, 126 F.3d at 376. That the class members are not all part of the same age and smoking demographic does not undermine their ability to satisfy this requirement because typicality "is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Madanat*, 282 F.R.D. at 313.

Plaintiff also alleges that Defendant breached the class-wide policies by failing to review the COI rate every five years. *See* Class Cert. Br. at 7. The proposed class could not satisfy the typicality requirement on this theory because the class members would need to make different legal arguments to prove Defendant's liability. Although Plaintiff's contract included a requirement to assess COI rates "at least once in every five contract years," *see* Compl. ¶ 32, that language was only included in certain versions of the policies in the proposed class and only for versions issued in New York, *see* Class Cert. Opp. at 2. Plaintiff argues that Defendant nonetheless had an obligation to review COI rates every five years based upon an implicit requirement found in Brighthouse internal documents, industry standards and practice, and some state insurance regulations. *See* Class Cert. Rep. at 3–5. Even if Defendant had such an obligation, that obligation cannot satisfy the typicality requirement because the class members would not be able to make "similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. For Plaintiff, proof of liability depends upon showing a breach of an express provision of the contract, whereas for the class members who did not have this language, proof of liability depends upon a variety of different legal theories. Accordingly, the proposed class cannot establish typicality for the failure to review claim and it is not susceptible to class action treatment.

### iv.    Adequacy

The adequacy requirement is satisfied where "the class representatives 'will fairly and adequately protect the interests of the class.'" *Cent. States Se. & Sw. Areas Health & Welfare*

*Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Denney*

*v. Deutsche Bank AG,* 443 F.3d 253, 267 (2d Cir. 2006)).  Assessing whether the adequacy

requirement is met "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the

interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and

able to conduct the litigation."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d

Cir. 2009).

The adequacy of Plaintiff's counsel is not in dispute and the Court finds that they have

the requisite experience and qualifications to represent the class.  *See* Dkt. No. 123-18 (providing

experience and resumes of Plaintiff's counsel).  As to the adequacy of Mr. Martin as a class

representative, Defendant challenges his adequacy on the grounds that his failure to review claim

is not timely.  *See* Class Cert. Opp. at 14.  Specifically, Defendant argues that the statute of

limitations applicable to Mr. Martin is six years and Mr. Martin's COI rate was reviewed within

the statutory period, and so any prior failure to review would be time-barred.  *Id.*  Plaintiff does

not meaningfully contest that argument, but instead claims that Martin "need not have identical

claims to the class."  Class Cert. Rep. at 14.  While a named Plaintiff cannot be an adequate class

representative if his claim is time barred, because the Court is not certifying a class on the basis

of Plaintiff's failure to review claim, Defendant's contention does not bear on the adequacy

prong.  *See Vincent v. Money Store*, 304 F.R.D. 446, 456 (S.D.N.Y. 2015) ("If a named

plaintiff is time-barred from pursuing an action, the plaintiff would be an inadequate

representative of the class because that plaintiff would not be a member of the

class.").  Defendant does not challenge Plaintiff's adequacy as to the failure to decrease claim

and the Court finds Plaintiff to be an adequate representative.  Because Plaintiff's failure to

decrease claim rises and falls with the claims of the proposed class, his interests are not

"antagonistic" with the class members' interests and the adequacy prong is met as to the modified class. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 at 35.

### v.    Ascertainability

Finally, the proposed class, as modified, meets the implied requirement of ascertainability. A class is ascertainable if it is "defined using objective criteria that establish a membership with definite boundaries." *Merryman v. Citigroup, Inc.*, No. 15-CV-09185 (CM), 2018 WL 1621495, at *12 (S.D.N.Y. Mar. 22, 2018) (quoting *In re Petrobras Sec.*, 862 F.3d at 257). Plaintiff contends that class members can be "objectively identified through Brighthouse's policy owner records." *See* Class Cert. Br. at 15. The Court agrees. Courts in this district have found classes to be ascertainable in similar litigations on those same grounds. *See, e.g.*, *In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *12 ("[B]ecause [defendant] maintains records of each policy's registered owner, there is no dispute that class members are readily ascertainable."). Accordingly, the ascertainability requirement is met.

### 3.    23(b)(3) Requirements

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* Class Cert. Br. at 5. To certify a class under Rule 23(b)(3), the Court must find that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The elements of a breach of contract claim under New York Law are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Piuggi v. Good for You Prods. LLC*, 739

F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011)).

Defendant argues that individual issues predominate in assessing the final two elements of Plaintiff's breach of contract claim for failure to decrease COI rates. First, Defendant claims that there is not sufficient evidence that a COI rate decrease was warranted for all of the insurance products at issue in the broader class Plaintiff proposed. Second, Defendant argues that damages cannot be measured on a class-wide basis. Both of these contentions are addressed by narrowing the class to only holders of the ULX and ULXP policies.

Defendant's expert explained that policies have different COI rate scales based on (i) differences in the assumptions used to price the In-Scope Policies; (ii) differences in demographics of the policyholder; (iii) the face amount of insurance; (iv) underwriting decisions; (v) the number of rate classes; and (vi) whether the policies are variable. *See* Pfeifer Rep. ¶¶ 163, 168, 173. The potential discrepancies that the report identified largely do not apply to the ULX and ULXP policies. They are both non-variable products, *see id.* ¶ 173, were issued during the same time period, *see id.* ¶ 187, have the same number of rate classes, *see id.* ¶ 117, and are "individual UL products with similar product specifications, were sold by the same distribution channels, and used similar underwriting guidelines," *id.* ¶ 97. Furthermore, the record indicates that Brighthouse itself analyzed COI rates for these two policies together. *See, e.g.*, Dkt. No. 142-5 (indicating that, in its 2019 COI rate review, Brighthouse assessed the ULX and ULXP policies together); Pfeifer Supp. Rep. ¶ 10 n.8 ("Martin-40 refers to 'ULX(P)' future profitability scenarios, meaning scenarios for which In-Scope Products ULX and ULXP were run together. Because Martin-40 combines the two products when displaying results, I refer to this as 'ULX(P)' where applicable."). Accordingly, the record demonstrates that variations in

policies will not preclude a class-wide finding for breach of contract when the class is limited to only holders of the ULX and ULXP policies.  Furthermore, despite the nationwide nature of this class, variations in state law also do not preclude certification as to this claim because "state contract law defines breach consistently such that the question will usually be the same in all jurisdictions."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013).

As to damages, "[a]ll that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'"  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015) (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).  Defendant argues that damages issues preclude certification because (i) "Mr. Long's model [is] incapable of measuring damages 'across the entire class' because Mr. Long did not account for differences among In-Scope Products which would directly affect the alleged damages of those products' policyholders," (ii) Mr. Long's damages model does not match Plaintiff's theory of litigation and overcompensates policy holders, and (iii) "an appropriate measure of damages would require individual inquiries into whether policyholders would have changed their behavior in response to lower COI Rates," which Mr. Long did not analyze.  Class Cert. Opp. at 23–25.

Taking Defendant's contentions in turn, Mr. Long's failure to account for differences among policies does not render his model inapplicable to the class as modified by the Court—the policies Mr. Long's model did not address are no longer at issue in this litigation.  Second, Mr. Long's model appears consistent with Plaintiff's theory of litigation.  Plaintiff alleges that Brighthouse charged COI rates in excess of those allowed under the policy.  *See* Compl. ¶ 66. Mr. Long created a model of damages that assessed the damages owed based on a COI

overcharge.[5]  *See* Class Cert. Rep. at 24.  Such a model aligns with Plaintiff's theory of liability and sufficiently shows that "damages stemmed from the defendant's actions that created the legal liability."  *Sykes*, 780 F.3d at 88.  Finally, Plaintiff's contention that an appropriate damages model requires individual inquiries into policy holder's responses to lower COI rates, even if true, would not preclude certification because "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)."  *See also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015).  Thus, the damages issues Defendant identifies do not preclude certification.

Ultimately, the Court finds that, for Plaintiff's failure to decrease claim, "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof" and these issues are "more substantial than the issues subject only to individualized proof."  *Id.* (quoting *In re U.S. Foodservice Inc.*, 729 F.3d at 118).  The central issue in this case is whether Defendant breached its contract with the class members by failing to lower COI rates.  That issue "can be achieved through generalized proof" and is "more substantial" than calculations of individual damages.  *Id.* Accordingly, for this claim, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In contrast, variations in state law preclude satisfaction of the predominance requirement for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. "[N]ationwide class action movants must creditably demonstrate, through an extensive analysis

---

[5] The Court recognizes that Defendant has significant criticisms of Mr. Long's damages calculation even with the narrowed class definition set out in this Opinion.  The Court need not, and does not, assess those criticisms here, except to the extent necessary to conclude that, whatever their merit, they do not preclude a finding that the modified class can be certified as to the failure to decrease claim.

of state law variances, that class certification does not present insuperable obstacles." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 576 (quoting *In re U.S. Foodservice*, 729 F.3d at 127). The ULX and ULXP policies appear to have been sold in all fifty states. *See* Dkt. No. 142-6. Defendant has identified significant differences in the elements of this claim by state, including differences in whether intent is required to establish the claim. *See* Class Cert. Opp. at 30; *see also Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 547 (C.D. Cal. 2013) (declining to certify a nationwide class based on a breach of good faith and fair dealing claim due to variations in state law); *Woodard v. Fid. Nat. Title Ins. Co.*, No. 06-CV-1170 (RB) (WDS), 2008 WL 5737364, at *7 (D.N.M. Dec. 8, 2008) (finding that "the legal scope and requirements of a claim for breach of the duty of good faith and fair dealing differ markedly among" Arizona, Oregon, Idaho, Washington, and New Mexico and declining to certify a class on those grounds); *Buffalo Seafood House LLC v. Republic Servs., Inc.*, No. 7:22-CV-1242 (RMG), 2024 WL 4608308, at *5 (D.S.C. Oct. 28, 2024) (finding that "predominance would not be met for Plaintiffs' breach of good faith and fair dealing claims because of the variance in state laws."). Plaintiff's only argument as to why state law variations do not preclude class certification for this claim it that "any state law variations can be readily managed through subclasses if necessary." Class Cert. Rep. at 14. But the need to divide up a nationwide class into potentially 50 sub-classes by state suggests that adjudication of this claim as a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, the predominance requirement is not satisfied for Plaintiff's good faith and fair dealing claim.

Rule 23(c)(4) provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Where, as here, "the

action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement," the Court may still "certify a class on a particular issue" pursuant to Federal Rule of Civil Procedure 23(c)(4). *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 464. Accordingly, pursuant to Rule 23(c)(4), the Court certifies the class, as modified, as to Plaintiff's claim for breach of contract based the alleged failure to decrease COI rates.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification as to Plaintiff's claim for breach of contract based on Defendant's alleged failure to decrease COI rates and certifies the following class:

> All persons who own or owned a UL insurance policy with the product codes ULX or ULXP in any of the 50 states, Puerto Rico or any United States territory issued and/or currently administered by Brighthouse Life Insurance Company that contains the following language: "We will base these [cost of insurance] rates only on our future outlook for mortality and expenses."

The Court APPOINTS Plaintiff Lawrence E. Martin as class representative and Milberg Coleman Bryson Phillips Grossman PLLC as class counsel.

The Court DENIES Plaintiff's motion for class certification as to Plaintiff's claim for breach of contract based on a failure to review COI rates, and for breach of the implied covenant of good faith and fair dealing.

The Court DENIES Defendant's motion to exclude the expert opinion of Plaintiff's expert Terry M. Long, and GRANTS in part and DENIES in part Defendant's motion to exclude the expert opinion of Plaintiff's expert James M. Carson.

The Court GRANTS in part and DENIES in part Plaintiff's motion to exclude opinions and testimony from Defendant's expert Timothy Pfeifer. The Court DENIES Plaintiff's motion to strike the report of Dr. Bruce Strombom.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 86, 119, 133, and 136.

Dated: September 25, 2025
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge